IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HEATHER VARGAS,

    Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of the Social Security
Administration,

    Defendant.

CIVIL ACTION
NO. 18-1121

**OPINION**

**Slomsky, J.**                                                                                                                                                                                       July 8, 2019

## I.    INTRODUCTION

Before the Court are the Objections of Plaintiff Heather Vargas ("Plaintiff") to the Report and Recommendation ("R&R") of United States Magistrate Judge Timothy R. Rice. (Doc. No. 17.) On March 15, 2018, Plaintiff initiated this action by filing a Motion for Leave to Proceed in <u>Forma</u> <u>Pauperis</u>. (Doc. No. 1.) On March 26, 2018, Plaintiff filed a Complaint against Nancy A. Berryhill ("Defendant"), Acting Commissioner of the Social Security Administration, alleging that Defendant wrongfully denied her Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (Doc. No. 3.) On January 10, 2019, the Court referred the case to Magistrate Judge Rice for the R&R. (Doc. No. 16.)

On January 30, 2019, Magistrate Judge Rice issued the R&R, recommending that Plaintiff's request for review be denied. (Doc. No. 17.) On February 13, 2019, Plaintiff timely

filed Objections to the R&R. (Doc. No. 18.) On February 27, 2019, Defendant filed a Response to Plaintiff's Objections. (Doc. No. 20.)

Pursuant to 28 U.S.C. § 636(b)(1), the Court has conducted a de novo review of the portions of the R&R to which Objections were made. After an independent review of the record and for the reasons that follow, the Court will overrule Plaintiff's Objections (Doc. No. 18) and adopt the R&R in its entirety.

## II. BACKGROUND

### A. Factual and Procedural Background

Plaintiff Heather Vargas, a forty-three year old woman, was born on September 26, 1976. (Administrative Record ("R.") at 98.) She has a high school education and past relevant work as a nursing assistant, a delivery food driver, and a personal care assistant. (R. at 34-35.) She currently lives with her husband, father, and brother. (R. at 972.)

In October 2013, Plaintiff filed an application for disability benefits, claiming she had mental impairments including manic depression and social anxiety. (R. at 47-48.) On October 18, 2013, Plaintiff filed an application for SSI. (R. at 15.) On October 21, 2013, Plaintiff also filed an application for DIB. (R. at 98-100.) In her applications, she claimed that, as of her amended onset date,[1] she suffered from manic depression and social anxiety. (R. at 47.) On August 15, 2014, Plaintiff's claim was denied. On October 9, 2014, Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). (R. at 59.)

On June 8, 2016, ALJ Richard E. Guida held a hearing. (R. at 15.) Plaintiff, who was represented by counsel, testified at the hearing that she had reoccurring suicidal thoughts, often

---

[1] Plaintiff's final, amended onset date is October 18, 2013. (R. at 958.) On September 6, 2013, Plaintiff's prior application for benefits was denied. As such, her amended onset date became September 7, 2013. This onset date was further amended to October 18, 2013, the same date on her SSI application. (Doc. No. 17 at 1.)

2

harmed herself, had trouble attending social events, had trouble sustaining meaningful work, had low motivation, and had experienced numerous panic attacks each month. (R. at 961-67.) Additionally, the Vocational Expert testified that there was work Plaintiff could do in the national economy if she was limited to simple, routine tasks involving only simple work-related decisions with few, if any, workplace changes and only occasional interaction with supervisors, coworkers, and the public.[2] (R. at 975-76.)

On August 11, 2016, the ALJ issued a decision, finding that Plaintiff was not disabled within the meaning of the Social Security Act and that she was not entitled to DIB or SSI. (R. at 22.) Soon thereafter, Plaintiff appealed the ALJ's findings to the Appeals Council. On January 18, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Social Security Commissioner. (R. at 6-8.)

### B. Relevant Social Security Administration Regulations

To prove a "disability", a claimant must demonstrate "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). The claimant has the burden of proving the existence of a disability and can satisfy this burden by showing an inability to return to former work. Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979). If she does so, the burden shifts to the Commissioner to show that, given the claimant's age, education, and work experience, she is able to perform specific jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(f).

---

[2] The vocational expert testified that Plaintiff could work as a machine feeder (148,000 jobs nationally), as a bakery worker on a conveyor line (57,000 jobs nationally), and as a table worker (54,000 jobs nationally). (R. at 21.)

When evaluating a disability, the Social Security Administration uses a five-step process, which is followed in a set order:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the durations requirements in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find you are disabled.
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520(a)(4)(i)-(v).

At the third step, the ALJ evaluates whether the claimant's impairment is so severe that it meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1 (2015). In making this finding, the ALJ must consider whether the "Paragraph B" criteria are satisfied. To satisfy the Paragraph B criteria, the mental impairments must result in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. Id. A marked limitation means more than moderate but less than extreme. Id. Repeated episodes of decompensation, each

of extended duration, means three episodes within one year, or an average of once every four months, each lasting for at least two weeks. (R. at 17A.)

Between the third and fourth steps, the Social Security Administration assesses a claimant's residual functional capacity ("RFC"), which is the "most [a claimant] can do despite [her] limitations." § 404.1545(a)(1). The Administration uses the RFC assessment to determine at the fourth step whether the claimant is able to do her "past relevant work."  § 404.1545(a)(5)(i).

When determining RFC, the Administration considers "all the relevant evidence in the case record . . . including [a claimant's] medically determinable impairment that are not 'severe.'" § 404.1545(a)(1-2). According to the regulations, the Administration "will consider whether [a claimant's] statements and the statements from third parties are consistent with the medical and other evidence . . . ." 20 C.F.R. Part 404, Subpart P, App. 1 § 12(C)(3).

**C. The ALJ's Findings**

In a decision issued on August 11, 2016, the ALJ applied the Social Security Administration's five-step evaluation and determined that Plaintiff was not disabled as defined by the Social Security Act. (R. at 17-22.) The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since October 18, 2013, the amended alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: an anxiety disorder, a bipolar disorder, depression, and [post-traumatic stress disorder] PTSD (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20

5

CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functioning capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: she is limited to simple and routine tasks, involving simple work related decisions, with few, if any work place changes. She is limited to occasional interaction with supervisors, coworkers, and the public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on September 26, 1976 and was 36 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 18, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. at 17-22.) As a result, the ALJ found that Plaintiff was not entitled to DIB or SSI.

### III. STANDARD OF REVIEW

When reviewing a final decision of the Commissioner of Social Security, the Court must determine whether the record demonstrates substantial evidence to support the Commissioner's decision. 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "more than a mere scintilla . . . [and includes] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cherry v. Barnhart, 29 F. App'x 898, 901 (3d Cir. 2002) (quoting Richardson v.

Perales, 402 U.S. 389, 407 (1971)). The Commissioner's findings of fact, as long as they are supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g).

Because the Commissioner adopts an ALJ's decision as his findings of fact, the ALJ must set out a specific factual basis for each finding. Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974); see also 42 U.S.C. § 405(b)(1). An ALJ must consider, evaluate, and refer to specific medical evidence in the record in his decision. See Reefer v. Barnhart, 326 F.3d 376, 381-82 (3d. Cir. 2003). Based on this evidence, an ALJ determines whether a claimant proved a "disability," and the Commissioner adopts this decision as his finding of fact. Even if the record offers evidence that undermines the ALJ's conclusion, the Court will not overrule the decision of the ALJ unless the ALJ's finding is not supported by substantial evidence. Simmonds v. Heckler, 807 F.2d 54, 58 (3d Cir. 1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate," not "a mere scintilla." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 118 (3d Cir. 2000) (citing Plummer v. Apfel, 186 F.3d 422, 427 (3d. Cir. 1999)).

## IV. ANALYSIS

Plaintiff makes two Objections to Magistrate Judge Rice's R&R. (Doc. No. 18.) First, Plaintiff objects to the Magistrate Judge's finding that substantial evidence supports the ALJ's decision to grant "limited weight" to the medical opinions of Dr. Ann Dall, Plaintiff's outpatient psychiatrist. (Id. at 1-3.) Second, Plaintiff objects to the Magistrate Judge's finding that the RFC assessment was supported by substantial evidence. (Id. at 3-4.) The Court will address each Objection seriatum.

### A. The Court Will Overrule Plaintiff's First Objection

In her first Objection, Plaintiff argues that the Magistrate Judge erred in finding that substantial evidence supports the ALJ's decision to grant "limited weight" to the opinions of Dr. Dall. (Id. at 1.) In doing so, she makes three distinct arguments: (1) that the Magistrate Judge

7

erred in finding that Dr. Dall's opinion was inconsistent with the treatment records; (2) that, to the extent the ALJ determined Dr. Dall's opinion was inconsistent with the record, he should have requested further clarification from Dr. Dall.; and (3) that the ALJ erred in relying on Global Assessment of Functioning ("GAF") scores (Id. at 1-3.) For the reasons discussed below, the Court is not persuaded by Plaintiff's arguments.

> **1. The Magistrate Judge Did Not Err in Finding that Dr. Dall's Opinion Was Inconsistent with the Treatment Records**

The ALJ assigned "limited weight" to Dr. Dall's medical opinion because he found it to be inconsistent with the Plaintiff's treatment records. (Id. at 1.) On review, the Magistrate Judge agreed that to the extent the ALJ discounted Dr. Dall's opinions, it was due to the fact that Dr. Dall's opinions were inconsistent with Plaintiff's medical records and other evidence. Plaintiff objects to this determination, arguing that Dr. Dall's medical opinion consistently documented Plaintiff's psychiatric signs and symptoms.[3] The Court disagrees.

As the factfinder, the ALJ is specifically charged with the duty to evaluate all medical evidence in a disability insurance benefits case. See 20 C.F.R. §§ 416.945, 416.946(c). The ALJ—who is not a physician or consultant—makes the ultimate determination as to whether a claimant is disabled. Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). "The law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." Brown v. Astrue, 649 F.3d 193, 197 n.2 (3d Cir. 2011). According to the Third Circuit Court of Appeals, an ALJ may reject a physician's opinion where it is not supported by medically-

---

[3] Plaintiff's Objections state the following "psychiatric signs and symptoms: depressed mood, anxiety, worry, sleep disturbances, lack of motivation, decrease in energy, panic attacks, crying spells, . . . nightmares, tearfulness, suicidal ideation, flashbacks, inappropriate guilt, feelings of hopelessness, feelings of worthlessness, loss of appetite, and social withdrawal." (Doc. No. 18 at 1.)

acceptable clinical and laboratory diagnostic techniques, or where the opinion is inconsistent with other substantial evidence in the record. Fargnoli v. Halter, 247 F.3d 34, 43 (3d Cir. 2001). Additionally, when considering the amount of weight to afford to a treating physician's opinion, the ALJ must consider the consistency of the opinion with the evidence in the record. 20 C.F.R. § 416.927(d)(2).

First, the ALJ assigned limited weight to some of Dr. Dall's opinions (R. at 217-22) because he found them to be inconsistent with the other evidence in the record, including the opinion of Dr. Thomas Fink, a psychological consultant who does work for the Social Security Administration. (R. at 20.) For example, Dr. Dall opined that Plaintiff had marked restriction on activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, and three episodes of decompensation within 12 months, each of which lasted at least two weeks.[4] (R. at 221.) Dr. Fink, however, determined that Plaintiff had mild restriction on activities of daily living, moderate difficulties maintaining social functioning, moderate difficulties maintaining concentration, persistence, or pace, and no repeated episodes of decompensation. (R. at 50.) Despite her limitations, Dr. Fink opined that Plaintiff could "meet the basic mental demands of simple tasks on a sustained basis" which direct a finding of "not disabled." (R. at 53-54.)

Additionally, Dr. Dall found that Plaintiff was unable to work outside the home because Plaintiff's impairments would cause her to be absent from work more than four days per month.[5]

---

[4] A marked limitation means more than moderate but less than extreme. Under the "Paragraph B" criteria listed in the third step of the Social Security Administration's five-step analysis, Dr. Dall's opinion here would have directed a finding of "disabled". 20 C.F.R. Part 404, Subpart P, App. 1.

[5] At the hearing before the ALJ, the vocational expert testified that if Plaintiff were to be absent more than 1.3 days per month, she would not be able to perform any work.

(R. at 221-22.) Further, Dr. Dall determined that Plaintiff was generally unable to meet competitive standards when it came to her ability to do work-related activities in a normal work setting. (R. at 219-20.) Conversely, Dr. Fink opined that Plaintiff was not significantly limited in her ability to complete a normal workday and workweek without interruptions caused by her psychological symptoms. (R. at 52.) Though Dr. Fink determined that Plaintiff was unable to perform her past relevant work, he found that Plaintiff could still perform unskilled work. (R. at 54.) This was due to Dr. Fink's finding that Plaintiff was not significantly limited in her ability to perform activities according to a work schedule, to maintain regular workplace attendance, and to be punctual under workplace policies. (R. at 52.) Finally, the ALJ and Dr. Fink both concluded that Dr. Dall's opinions outlined above were inconsistent with Plaintiff's GAF scores, which were generally between 54 and 56.[6] (R. at 20.)

Ultimately, the ALJ determined that the record showed significantly less mental health issues than Plaintiff's treatment records and progress notes which, as a whole, were suggestive of only "moderate mental health symptoms and limitations." (R. at 20.) The Court agrees with the Magistrate Judge that the ALJ accurately summarized the medical records and found that, while Plaintiff continued to experience the symptoms set out in her Objections, "her mental status examinations were largely normal." (Doc. No. 17 at 12). As such, the Court is persuaded that to the extent that the ALJ granted limited weight to Dr. Dall's opinions, it was properly based on their inconsistencies with the record.

---

[6] GAF scores grade a patient's mental health according to a 100-point scale. The scores are based on the patient's state of mind and symptoms on the particular day the GAF assessment is administered. Am. Psychiatric Assoc., Diagnostic and Statistical Manual on Mental Disorders 34 (4th ed. 2000) ("DSM-IV"). A GAF score in the range of 51 to 60 indicates "[m]oderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers)." DSM-IV at 34.

## 2. The Magistrate Judge Did Not Err in Rejecting Plaintiff's Argument That the ALJ Should Have Requested Clarification from Dr. Dall Regarding Plaintiff's RFC

Next, Plaintiff contends that to the extent that the ALJ determined Dr. Dall's opinions were inconsistent with the record, he should have requested further clarification from Dr. Dall. (Doc. No. 18 at 2.) Again, the Court disagrees.

The Third Circuit has made clear that the ALJ is only required to request clarification when "the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled." Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 205 (3d Cir. 2008) (citing 20 C.F.R. 416.912(e)(1)); see also Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2007) ("[T]he requirement for additional information is triggered only when the evidence from the treating medical source is inadequate to make a determination as to the claimant's disability."). Furthermore, the ALJ is under "no obligation to re-contact a medical source even when there is insufficient evidence to determine if a claimant is disabled . . . and where there are inconsistencies, the ALJ will . . . see whether a determination can nonetheless be made based on the evidence. Hartman v. Berryhill, Civ. No. 17-3346, 2018 U.S. Dist. LEXIS 221841, at *27 (E.D. Pa. Dec. 17, 2018) (citing 20 C.F.R. § 404.1520(b)-(c)).

As properly outlined in the R&R, there was substantial evidence which enabled the ALJ to make a disability determination in this case. (Doc. No. 17 at 16.) As noted prior, Plaintiff had GAF scores generally in the range of 54-56. (Id.) Since Plaintiff's amended onset date, she did not exhibit psychotic symptoms and her mental condition was generally described as "stable." (Id. at 16-17.) Additionally, in 2016, Plaintiff had largely normal mental status examinations, despite her ongoing symptoms. (Id. at 17.)

The ALJ determined that Plaintiff was exaggerating the frequency and severity of her symptoms and that she actually had a greater capacity for social interaction.[7] (Id.) The ALJ also found that Plaintiff had improved since the date of her last unfavorable benefits decision, when she had required more intensive care. (R. at 20.) Plaintiff now only requires conservative and exclusively outpatient care. (R. at 20.) Finally, the ALJ relied on Dr. Fink's opinion which, as outlined above, ultimately directed a finding of "not disabled." (R. at 53-54.)

Based on the above, the ALJ had ample evidence to make a determination in Plaintiff's case. The ALJ was "under no obligation to re-contact" Dr. Dall.

### 3. The Magistrate Judge Did Not Err in Relying on Plaintiff's GAF Scores

Plaintiff argues that the ALJ erred in relying on Plaintiff's GAF scores in her disability assessment. (Doc. No. 18 at 2.) Plaintiff argues that because the GAF scale was erased from the latest edition of the Diagnostic and Statistical Manual of Mental Disorders ("DSM-5"),[8] her GAF scores should not have been considered as part of the ALJ's findings. (Id.) Plaintiff's argument is without merit.

Plaintiff is correct that the GAF scale was erased from DSM-5 in 2013. In light of the publication of DSM-5, the Social Security Administration released an Administrative Message

---

[7] This conclusion was due, in part, to Plaintiff's plan to attend a live broadcast of "The Price is Right," and plan to attend a professional wrestling event. In both instances, Plaintiff did not attend due to circumstances other than her mental impairments. She did not attend a live broadcasting of "The Price is Right" because her car broke down. She did not attend the professional wrestling event because of financial constraints. (R. at 19-20.)

[8] "DSM" is an abbreviation for the Diagnostic and Statistical Manual of Mental Disorders. The DSM is published by the American Psychiatric Association and is used as a guide by clinicians and researchers around the world to diagnose and classify mental disorders. About DSM-5, American Psychiatric Association (June 14, 2019, 9:18 AM), https://www.psychiatry.org/psychiatrists/practice/dsm/about-dsm. The DSM recently published its fifth edition and, as such, is now commonly referred to as "DSM-5."

("AM") addressing how GAF scores were to be considered. (Admin. Message 13066, Global Assessment of Functioning (GAF) Evidence in Disability Adjudication) (Soc. Sec. Admin. July 22, 2013.) "Critically, the AM notes that even though DSM-5 eliminated the GAF scale, the [Administration] 'will continue to receive and consider GAF in medical evidence.'" Nixon v. Colvin, 190 F. Supp. 3d 444, 447 (E.D. Pa. 2016) (quoting AM 13066). More specifically, the AM further states that the GAF is just "one opinion that we consider with all the evidence about a person's functioning." Lee v. Colvin, Civ. No. 11-4641, 2014 U.S. Dist. LEXIS 78624, at *17, n.3 (E.D. Pa. June 10, 2014).

The present action, having been filed with the Administration in 2013, allowed for the ALJ to consider Plaintiff's GAF scores as part of the relevant medical evidence. The ALJ did not give these scores controlling weight; rather, they were reviewed in the context of Dr. Dall's records. Ultimately, the ALJ determined that the scores were consistent with Plaintiff's "stable" condition and largely normal mental status examination results. (Doc. No. 17 at 16-17 n.12); see also, SSA AM-13066 § E (give controlling weight to a GAF from a treating source if it is well supported and consistent with the other evidence). Furthermore, the Court agrees that the ALJ did not over-rely on the GAF scores. Rather, he gave "great weight" to Dr. Fink's opinion. (Doc. No. 17 at 17, n.12.)

As previously mentioned, these GAF scores were consistent with the balance of Plaintiff's medical record and Dr. Fink's opinions. Accordingly, the ALJ and the Magistrate Judge properly considered Plaintiff's GAF scores. As such, the Court will overrule Plaintiff's first Objection.

### B. The Court Will Overrule Plaintiff's Second Objection

Plaintiff objects to the Magistrate Judge's conclusion that substantial evidence supports the ALJ's mental RFC finding. (Doc. No. 18 at 3.) As discussed below, the Court agrees with the Magistrate Judge that the ALJ properly determined Plaintiff's RFC.

As noted above, step two of the Social Security Administration's five-step analysis involves considering the severity of the claimant's impairments. An impairment is considered severe if it significantly limits an individual's ability to perform basic work activities. (R. at 16.) Conversely, an impairment is not severe when evidence establishes only a slight abnormality that has no more than a minimal effect on an individual's ability to work. 20 C.F.R. § 404.1521. If the impairment is not sufficiently severe under the Administration's regulations, the claimant is not considered disabled. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant's impairment is deemed severe, the analysis proceeds to the third step.

Here, the ALJ concluded that Plaintiff "has the following severe impairments: an anxiety disorder, bipolar disorder, depression, and PTSD" and found that these impairments cause "more than a minimal effect on the claimant's ability to work." (R. at 17.) As such, the ALJ proceeded to the third step.

At the third step, the ALJ evaluates whether the claimant's impairment is so severe that it meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1. In making this finding, the ALJ must consider whether the "Paragraph B" criteria are satisfied. To satisfy the Paragraph B criteria, the mental impairments must result in at least two of the following: (1) marked[9] restriction of activities of daily living; (2) marked difficulties in

---

[9] As previously noted, a marked limitation means more than moderate but less than extreme.

14

maintaining social functioning; (3) marked difficulties in concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration.[10] Id.

After examining the credible, objective evidence in the record, the ALJ concluded that Plaintiff's mental impairments did not satisfy the "Paragraph B" criteria because Plaintiff did not have marked restrictions or limitations in a single category, nor did she have any episodes of decompensation. (R. at 17A.) Notably, the ALJ found that Plaintiff had only moderate difficulties maintaining concentration, persistence, or pace. (R. at 17A.) More specifically, the ALJ determined that Plaintiff had "some trouble concentrating and dealing with stress." (R. at 17A.) Because the ALJ determined that Plaintiff's impairments did not satisfy the "Paragraph B" criteria, he proceeded to step four.

As noted prior, between steps three and four of the five-step evaluation process, the Administration assesses a claimant's residual functional capacity, which is the "most [a claimant] can do despite [her] limitations." See 20 C.F.R. § 404.1545(a)(1). The Administration uses a claimant's RFC to evaluate whether the claimant can perform her past relevant work. § 404.1545(a)(5)(I). To make a RFC assessment, the ALJ must first consider the claimant's symptoms and the extent to which the symptoms can be reasonably accepted as consistent with the objective medical evidence. Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's functioning. (R. at 18.) In determining a claimant's RFC, the ALJ is only required to consider limitations supported by credible evidence. Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005).

---

[10] Repeated episodes of decompensation, each of extended duration, means three episodes within one (1) year, or an average of once every four months, each lasting for at least two (2) weeks.

15

In the present case, after considering Plaintiff's limitations as described in steps two and three, the ALJ found that Plaintiff's impairments could reasonably be expected to cause her symptoms of sleep disturbances, changes in energy, panic attacks, tearfulness, a depressed mood, nightmares, and anxiety. (R. at 18-19.) However, the ALJ also determined that Plaintiff's statements regarding the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (R. at 18.) As a result, the ALJ concluded that Plaintiff has the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations: (1) she is limited to simple and routine tasks, with few, if any work place changes; (2) she is limited to occasional interaction with supervisors, co-workers, and the public. (R. at 18.)

Plaintiff objects to the ALJ's RFC assessment arguing that it failed to account for Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace. (Doc. No. 18 at 3.) This argument is unavailing.

The ALJ accounted for Plaintiff's moderate difficulties maintaining concentration, persistence, or pace when making his RFC assessment. The ALJ specifically stated that "[d]ue to [Plaintiff's] alleged problems concentrating, the claimant is limited to specific, routine tasks involving simple work related decisions and few, if any work place changes." (R. at 20.)

Plaintiff contends that the ALJ's assessment does not accurately reflect her moderate restrictions in concentration, pace, and persistence. As such, the Court finds that the additional limitations involving simple work related decisions and few, if any, workplace changes adequately encompasses Plaintiff's moderate difficulties maintaining concentration. See McDonald v. Astrue, 293 F. App'x 941, 946 (3d Cir. 2008) (holding that jobs that only require simple one or two-step tasks in response to simple instruction adequately account for a finding that the claimant has

16

moderate limitation in concentration, persistence, or pace); <u>Menkes v. Astrue</u>, 262 F. App'x 410, 412 (3d Cir. 2008) (ALJ's hypothetical limiting claimant to "simple routine tasks" accounted for moderate limitations in concentration, persistence, and pace).

Having independently reviewed the ALJ's decision, the Court is satisfied that the ALJ properly considered Plaintiff's mental impairments when evaluating the RFC. Further, substantial evidence in the record supports the ALJ's ultimate RFC assessment. For that reason, Plaintiff's second objection will be overruled.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Objections to the R&R (Doc. No. 18) will be overruled. The Report and Recommendation (Doc. No. 17) will be approved and adopted in its entirety. An appropriate Order follows.